## KLINE *against* GUTHART.

When an action is on a contract with the decedent; or for a tort to the goods before they have actually come to the executors possession; it can be maintained by him only on the decedent's title, and consequently only in a representative character: but when it is a contract, expressed or implied, which has sprung up or been created since the decedent's death; or for a tort to the goods in the executor's possession; or for converting or detaining them, having escaped from his possession; or for the price of them, having been sold by him; it can be maintained only in his own right, and the naming himself executor, will not change its nature.

A promise by husband and wife during coverture to pay the debt of the wife, contracted before marriage, and which was barred by the statute of limitations, will not revive such debt, so as to give a right to recover against the wife, after the death of her husband.

Referees having reported for the plaintiff, and in a note annexed to their report, stated, that the debt was revived by such promise; it was *held:* That although the referees had in this particular, mistaken the law, yet it could only be remedied by an application to the court below, and could not be taken advantage of on a writ of error.

ERROR to the Common Pleas of *Northumberland* county.

This action was originally brought by *Peter Guthart*, administrator of *John Epley*, deceased, against *Philip Moore* and *Mary* his wife, formerly *Mary Epley; a narr.* was filed for goods, wares and merchandize sold and delivered by the plaintiff to the said *Mary Epley* whilst *sole;* and also for money had and received by the said *Mary* whilst *sole*, for the use of the said plaintiff's administrator. In fact, the claim was for goods sold to *Mary Epley* at the vendue of the personal estate of *John Epley*, deceased. Issues were joined upon the pleas of *non assumpsit infra sex annos* and payment.

By consent of the parties the cause was submitted to referees under the act of 1705; who made this report, "We find for the plaintiff $330 40, the amount charged on the vendue list and $300 41, interest upon the same, amounting to $630 81." This was signed by the referees; and immediately beneath their signatures, was subjoined this note: "In the above case the demand was barred by the statute of limitations, but referees considered it, revived by a promise of defendant and her husband (now deceased) in his life-time."

The death of *Philip Moore*, before final judgment, was suggested; and the intermarriage of *Mary* his widow with *Jacob Kline* after final judgment.

In the court below, exceptions were filed to the report, which were over-ruled. The defendants then sued out this writ of error, and filed the following exceptions:

1. The declaration joins causes of action which could not be joined; and states promises which will not support the action.

(Kline *v.* Guthart.)

2. The action for goods, wares and merchandize sold and delivered by the plaintiff, should have been brought by *Peter Guthart*, in his personal character, and not as administrator.

The promise of defendant *Mary Epley*, while a feme-covert could not take the case out of the statute of limitations, and enable the plaintiff to recover on the original cause of action.

*Lashells* and *Bellas,* for plaintiffs in error,

Argued that the promise of a married woman, will not in law operate to take a case out of the statute of limitations, and cited 1 *Wils. Bac. Ab.* 497, 499. *Clancass' Husband and Wife,* 21. 3 *Pr. Wms.* 237. 1 *Chit. Plea.* 42. *Lloyd* v. *Lee,* 1 *Strange,* 94. *Grasser and Wife* v. *Eckart,* 1 *Bin.* 575. The new promise is the cause of action, if it can be sustained at all, when once barred, and the old debt is the consideration. *The case of Fields' estate,* 2 *Rawle,* 351. *Hudson* v. *Carey,* 11 *Serg. & Rawle,* 10. *Danforth* v. *Culver,* 11 *Johns.* 146. *Tillinghast,* 190.

*Donnel* for defendant in error.

The note subjoined to the report of the referees, formed no part of the award; it was merely the opinion of the referees about a particular *part* of the evidence. The award being good upon its face, why the referees found in a particular way, cannot be enquired into, or taken advantage of in this court, *Harker* v. *Elliott,* 7 *Serg. & Rawle,* 284. *Bellas* v. *Levy,* 2 *Rawle,* 21.

In an ordinary case, a promise of husband and wife, would not bind the wife; but in this case the debt was that of the wife; and the statute of limitations only taking away the remedy and not the right, the promise of the wife will revive it.

The opinion of the court was delivered by

GIBSON, C. J.—The first assignment of error is without foundation in fact, the counts in the declaration being all in the same right; for though the money is averred in the second to have been received to the plaintiff's use as administrator, the remedy is substantially his own, and the naming himself administrator, is description, if not surplusage. The rule is that where the action is on a contract with *the decedent,* or for a tort to the goods, before they have actually come to the *executor's possession;* it can be maintained by him only on the decedent's title, and consequently only in a representative character: but where it is on a contract, express or implied, which has sprung up, or been created since the decedent's death; or for a tort to the goods in the executor's possession; or for converting or detaining them, having escaped from his posses-

(Kline *v.* Guthart.)

sion; or for the price of them having been sold by him; it can be maintained only in his own right, and the naming himself executor will not change its nature. "Where," says *Lord Hale,* "the foundation of an action appears of necessity to commence in the testator, the writ shall be in the detinet, as if they bring debt on a judgment given in trespass brought by them of goods *taken out of the possession of their testator; contra* if it were *de bonis testatoris extra custodiam suam.* But if they take an obligation for a contract made to the testator; or if they sell'goods of the testator, it shall be *debet* and *detinet* because the commencement of the action was in the executors." *F. N. B.* 274 *note.* In support of this broad and comprehensive distinction between the title of the living and that of the dead, the books are full of authorities; among which it is sufficient to refer to *Roll's Abr.* 602. *Lane,* 80. 1 *Mod.* 62. *Cro. Jac.* 685. 2 *Keble,* 68. *Latch,* 220. 1 *Vent.* 109. *Cro. Car.* 219. *L. Raym.* 436. *id.* 1413. *Barnes' notes,* 132. In some of these there is a want of precision which might lead a superficial observer to suppose that an executor may, in particular circumstances, sue in the one character or the other: a matter that has in modern times produced much misconception, here and in *England,* on the part of those who were content to draw from the abridgments, instead of the original fountains. Thus it has been said that if the executor bring the action as such, when he *can* bring it in his own right, he shall pay costs if he fail. The meaning will, I think, appear to be, that naming himself executor, gives him no advantage belonging to the character, where he sues substantially on his own title; and that it is the title set out, and not the addition, which is decisive of the question of character. Of this, there is no doubt in the action of debt, where the criterion is the mode in which the cause of action is laid—whether in the *debet* and *detinet,* or the *detinet* only—as it is in other actions, the inherent quality of the cause of action itself.

In *Reynell* v. *Langcastle,* *Cro. Car.* 545, it was determined, that an executor cannot have an action in the *detinet,* except where it might have been maintained by the testator: and in accordance is *Rolls. Abr.* 602, where it is said he cannot sue in the *detinet,* on an obligation for the testator's debt made to himself. In 6 *Mod.* 91, the same law is asserted of money received to his use after the testator's death; and also in 10 *Mod.* 315, of a promissory note made to him as executor. In *Com. Dig. Pleader.* 2. *D.* 1, it is said, he cannot have an action in the *detinet* on his own contract, though he name himself executor; as debt for rent on his own lease of land which he had as executor. In no case, perhaps, is he bound to omit the appellation of executor; but it is clear that where the cause of action is essentially his own, it operates, if at all, only as

description. Thus in *Horsey* v. *Dimocke,* 1 *Vent.* 119, it was ruled that if a plaintiff name himself executor, where the cause of action is in his own right, it is surplusage; and in *Worfield* v. *Worfield, Latch.* 220, the same thing is repeated in terms, and said to have been described also in *Taylor's* case in the Common Pleas. In *Jenkins* v. *Plombe,* 6 *Mod.* 91, which was an action by husband and wife executrix, for money had and received to their use *as executor, Lord Holt* said, that if the receipt of it were after the testator's death, and by consent of the executor, the debt would be a new creation for which the action would have to be in the plaintiff's own right, and that naming himself executor is of no further account than to show how the original right came. It is evident, therefore, that he did not consider it as a part of the title. He further said, that where one sues as executor, "though he has judgment, yet till execution, the thing recovered is not assets in his hands; and both he and Mr. *Justice Powell* declared that "where the thing is assets in the executors or administrator's hands *before* recovery, they shall pay costs in a non suit:" in other words, that the suit shall be in their own right for whatever had at any time been in their possession. In *Nicholas* v. *Killegrew,* 1 *L. Raym.* 137, where the plaintiff had declared for so much paid to his use after the testator's death, *Treby. Ch. J.* said, the naming of himself executor was not to any purpose. And by him and Mr. *Justice Powell,* "In all cases, where an executor or administrator sues for a debt or other thing belonging to the testator, and grounds his action on the same contract that was to the testator, he shall not pay costs if he fail in the suit; but if he grounds his action on a contract, express or by implication of law, which accrues to him after the death of the testator, there the action lies in his own name, and the naming himself executor *is void.* So in *Wallis* v. *Lewis,* 2 *L. Raym.* 1214. *Lord Holt* said, that the action being grounded on a promise to the executrix herself, naming her executrix was surplusage. And thus much for actions *ex contractu,* which it appears can be maintained in a representative character, only where the decedent was a party to the contract. As to actions for the goods, or injuries in respect of them, *Lord Holt* says in the same case of *Wallis* v. *Lewis,* that if an executor bring trespass or trover for the testator's goods, taken out of the executor's possession, he may name himself executor if he will, but that he need not produce the will in court, as he is sufficiently entitled on his own possession. And this distinction between the plaintiff's own contract or possession, and the contract or possession of the decedent, will be found to reconcile all the cases in the books that may be quoted here, except *Bull* v. *Palmer,* 2 *Lev.* 165, and *Boggs* v. *Bard,* 2 *Rawle,* 104. There is, indeed, a series of recent English

(Kline *v.* Guthart.)

decisions on this subject arranged in 1 *Saund. on Pled and Ev.* 496, which like many others, lessens, if it does not extinguish, our regret at the Act which prohibits the reading of British precedents subsequent in date to the declaration of our independence, as authority in our courts.   It may be safely affirmed that the recent decisions of the English judges, have done more to unsettle the law in the United States, than have all the American decisions together.   The archtype of the series alluded to, is the apocryphal case of *Bull* v. *Palmer*, just mentioned, the principle of which has been extended in *Cowell* v. *Watts*, 6 *East.* 405, to an action for the price of goods sold by the executor; yet if a bond had been taken for the price, it could have been recovered, according to *Hosier* v. *Arundel*, 3 *Bos.* & *P.* 7, and two cases still later, only by the obligee in his own right; and thus is the mere evidence of the debt and not the nature of it, made the criterion of the right! In fact, the difference in this respect, between a bond and a note, is expressly recognised in *Partridge* v. *Court*, 5 *Price*, 512.   It requires but another step to authorise an executor to enter into trade with the assets and contract responsibilities in a representative character.   Into such miserable inconsistencies do they fall, who forsake the beaten paths of the common law.

Did the question involve no more than matter of form, the distinction would not be worth the trouble of a discussion.   But it involves not only an exemption, in certain cases, from payment of costs by the plaintiff, but the joinder of jarring counts in the same declaration, where the damages to be recovered are entire.   Above all, it involves the preservation of known modes of proceeding according to the course of the common law, which ought never to be changed, but to avoid some practical mischief or serious inconvenience.   In actions *against* executors or administrators, who are answerable, conformably to a corresponding principle, in the *detinet* only on a responsibility of the decedent himself, the distinction is productive of consequences so palpable and substantial as to make it unnecessary to name them.   For the applicability of the principle to the case of an executor defendant, a train of authorities was given in *Morrow* v. *Brenizer*, 2 *Rawle*, 185; and though the conclusion drawn in that case is said, in *M'Culloch* v. *Sample*, 1 *Penn. Rep.*, 422, to be unsatisfactory, I presume (for there is no reason or explanation given as to the ground of the remark) that it was not intended to over-rule the authorities themselves.   I mention this case of *M'Culloch* v. *Sample*, to mark my dissent from it, that having been omitted in the report.

The remaining assignment of error is, that the arbitrators misconceived the law in treating the promise of the husband as a revival of the promise of his wife; and certainly since the doctrines of revival has been exploded, the new promise alone can be made the

(Kline *v.* Guthart.)

foundation of an action to avoid the statute of limitations; insomuch that the promise of the husband here, so far from operating on the rights of the wife after the dissolution of the coverture, would not have given a joint action against them in his lifetime. But whether the mistake of the arbitrators in this respect, be the subject of a writ of error, is the concluding inquiry raised by the argument.

The statement appended to the report is certainly as much a part of it, as if it were introduced into the body of the award.   What then is the nature of an award under the Act of 1705, in which are specially stated the grounds on which the arbitrators proceeded? So early as *Williams* v. *Craig,* 1 *Dall.* 338, and in many cases since, it was treated as a verdict; and indeed its effect is, in terms, declared to be such in the Act itself.   To give it effect, the concurrence of the court in which the action was depending, is required; and that is to be withheld wherever the court would, for the same cause, set aside a verdict: so that its interference is regulated, as in the granting or refusing of a new trial, entirely by discretion.   But a writ of error lies not to the verdict of a jury, but to the judgment which the court has rendered on it, and that will not be erroneous by reason of the verdict if the latter be unexceptionable as to form, or, in other words, if it be framed according to those rules which the law requires to be observed in the constitution of it.   If the jury have mistaken the law, without having been misdirected, the case is proper for revision, not in a superior court, but the one in which it was tried,   Even an error of the court in the course of the trial was without other remedy till the *Stat. Westm.* 2. gave the bill of exceptions, which however can not be sealed by arbitrators.   In what then was the error here?   Certainly in refusing to set aside the report.   That however like a refusal to set aside a verdict, rested entirely in discretion, and is not a matter for revision here.   But the arbitrators voluntarily put the ground of their decision on the record and the judgment of the court is said to be erroneous because rendered on premises that do not warrant it. We have a fashion of calling every thing a part of the record, that is committed to paper and filed in the cause.   Yet I doubt whether an averment would not lie against this part of the report; and if it would, the court was not bound to proceed on the matter contained, as judicially established by record proof.   It is the fact of mistake, and not the manner in which it is made appear, that is material to an exercise of judicial discretion; for whether it be disclosed by parol or the written admission of the arbitrators themselves, it is matter for the exercise of discretion still, in regard to which the court below is to be governed by its own sense of propriety.   It is further argued, however, that this report is in the nature of a spe-

63 .

(Kline *v.* Guthart.)

cial verdict; and that there is error in the rendition of a judgment. for the plaintiff on the facts found.   But no fact is found at all, nor any thing stated but a conclusion of law and the means used to avoid it.  A special law, contains a reference of the law to the court; but here the arbitrators have, for reasons set forth awarded generally and determined both the law and the fact.   But they had no authority to find the facts specially, had they been so disposed.   By the terms of the submission, they were required to dispose of the whole controversy; and to award that certain facts exist, would be to award nothing.   Neither could they delegate to the court a power that had been delegated to themselves.   It furnishes no objection to this conclusion, that it prevents a decision of the law by the court in the last resort.   Arbitrators are judges chosen by parties who resort to this species of tribunal voluntarily and consequently not only subject to all the incidents of its jurisdiction, but with presumptive notice of what those incidents are.   Neither of the assignments of error, therefore, is sustained.

*Huston, J.* dissented, *Ross, J.* took no part, not having heard the argument.

Judgment affirmed.